UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BARKER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OSEMWINGIE, et al.,<br><br>　　　　　Defendants. | No. 2:16-cv-3008 JAM CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding through counsel with an action pursuant to Titles II and V of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12132, 12203; Section 504 of the Rehabilitation Act (RA) of 1973; California's Disabled Persons Act (DPA), Cal. Civ. Code §§ 54.1, 54.3; the Unruh Civil Rights Act (URCA), Cal. Civ. Code §§ 51, 52; and 42 U.S.C. § 1983. (ECF No. 8-1.) Defendants have filed a motion to dismiss (ECF No. 32), which plaintiff opposes (ECF No. 36). Also pending is plaintiff's fully briefed motion for temporary restraining order. (ECF No. 9.) This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

I. <u>Plaintiff's Allegations</u>

In his second amended complaint, plaintiff alleges various violations of federal and state laws by defendants State of California (the State), California Department of Corrections and Rehabilitation (CDCR), Osemwingie, and Ramiscal. (ECF No. 8-1.) Counts One and Three

1

assert that defendants violated his rights under Title II of the ADA and Section 504 of the RA when a hoyer lift was improperly used to transfer him to his wheelchair and there was a delay in providing medical and nursing assistance. (Id. at 5-6, 7.) In Count Two, plaintiff alleges that he was retaliated against in violation of Title V of the ADA when the State and the CDCR denied him assistance transferring to and from his wheelchair after filing a lawsuit for ADA violations. (Id. at 6-7.) Counts Four and Five claim that defendants' violations under the ADA also violate the DPA and UCRA. (Id. at 8-9.) Finally, Count Six states that defendants Osemwingie and Ramiscal violated his Eighth Amendment rights when they failed to properly use the hoyer lift and when Ramiscal did not respond to plaintiff's repeated calls for assistance in transferring from the toilet. (Id. at 10.)

II. Motion to Dismiss

    A. Legal Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (alteration in original) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Tr., 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'"

Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). The court need not accept legal conclusions "cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981) (citations omitted).

### B. Defendants' Motion

Defendants move to dismiss the complaint on the grounds that plaintiff has failed to allege sufficient facts to support his claims under the ADA, RA, and Eighth Amendment; he has not exhausted his administrative remedies for his Title V retaliation claim; the State is entitled to Eleventh Amendment Immunity for plaintiff's DPA and UCRA claims; plaintiff did not comply with California's notice of claim requirements prior to bringing his DPA and UCRA claims; and the UCRA does not apply to prisons. (ECF No. 32-1.)

### C. Plaintiff's Response

In opposition to the motion, plaintiff argues that he has alleged sufficient facts; his lack of exhaustion was excused; the State has waived sovereign immunity; and the notice of claim requirements are preempted. Plaintiff does not challenge defendants' argument that the UCRA does not apply to prisons and requests that if defendants' motion to dismiss is granted, and he be given leave to amend.

### D. Dismissal With Leave to Amend

#### 1. Count Six

To maintain an Eighth Amendment claim based on inadequate medical treatment, plaintiff must show "'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is a very strict standard. It is more than "mere negligence." Farmer v. Brennan, 511 U.S. 825, 835, (1994). Even civil recklessness—failure "to act in the

face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"—is insufficient to establish an Eighth Amendment claim. Id. at 836-37 & n.5 (citation omitted). A prison official will be found liable under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle, 429 U.S. at 104-05). A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

Plaintiff alleges that defendants Osemwingie and Ramiscal violated his Eighth Amendment rights by using a hoyer lift improperly, causing injury to his back. (ECF No. 8-1 at 10, ¶ 59.) These allegations, without more, are insufficient to demonstrate deliberate indifference. At most, they demonstrate negligence. In opposition to the motion to dismiss, plaintiff argues that the risk of harm in using the lift incorrectly was obvious. (ECF No. 36 at 17.) Since facts regarding the obviousness of the risk of harm were not presented in the complaint, this argument fails to show that the complaint demonstrates more than negligence. However, plaintiff has demonstrated that he may be able to amend the complaint to fix the defects, and leave to amend should be granted as to this claim.

4

E.  Dismissal Without Leave to Amend

If the court finds that a complaint should be dismissed for failure to state a claim, the "court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). However, if "the pleading could not be cured by the allegation of other facts," then dismissal without leave to amend is proper. Id.

The undersigned finds that, as set forth below, plaintiff's claims in Counts One through Five and a portion of his claim in Count Six fail to state claims upon which relief may be granted. Moreover, given the nature of plaintiff's claims, there is no way for plaintiff to amend the complaint to fix the defects and leave to amend would be futile.

1.  Counts One and Three

To state a claim under Title II of the ADA, the plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002)); Weinreich v. Los Angeles Cnty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997) (citations omitted). "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in original). The Supreme Court has held that Title II of the ADA applies to state prisons. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998).

While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same

analysis to claims brought under both statutes," Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).

As an initial matter, it is unclear which defendants plaintiff is attempting to bring ADA and RA claims against, so to the extent he is attempting to bring such claims against Osemwingie and Ramiscal in their individual capacities, these claims must be dismissed. Stewart v. Unknown Parties, 483 F. App'x 374, 374 (9th Cir. 2012) (citing Lovell v. Chander, 303 F.3d 1039, 1052 (9th Cir. 2002)); see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."(citations omitted)); A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 804 (3rd Cir. 2007) (citation omitted) (no cause of actions against individuals under RA). If plaintiff is attempting to bring individual capacity ADA and RA claims under § 1983, he also fails to state a claim. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act.")).

The alleged improper use of the hoyer lift and "prolonged delay in receiving medical and nursing assistance" do not state a claim for relief under either Title II of the ADA or § 504 of the RA. There are no facts that show plaintiff was denied the benefit of services or programs or that such denial was *because of* his disability. Instead, plaintiff's allegations go to the adequacy of the treatment or assistance he was receiving, not to the denial of services because of his disability. "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)); see also Bryant, 84 F.3d at 249 ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. . . . The ADA does not create a remedy for medical malpractice.")

In his opposition to the motion to dismiss, plaintiff argues that he has sufficiently stated a violation based on his allegations of nursing staff withholding assistance transferring to and from his wheelchair. (ECF No. 36 at 5.) This argument lacks merit because the amended complaint

does not identify these allegations as the factual predicate for his Title II and RA claims. (ECF No. 8-1 at 6, 7 ¶¶ 30, 40.) These claims are based solely on the improper use of the hoyer lift and the unreasonable delay in providing medical and nursing assistance. (Id.) Accordingly, plaintiff's Title II and RA claims must be dismissed for failure to state a claim.

Even if plaintiff could amend to properly state claims under Title II and the RA against the State and the CDCR based on the withholding of assistance in transferring to and from his wheelchair, the claims should still be dismissed without leave to amend because, as addressed below, the claims and defendants would be improperly joined.

### 2. Count Two

In Count Two, plaintiff alleges that he was retaliated against in violation of Title V of the ADA. As an initial matter, defendants' argument that plaintiff's retaliation claim should be dismissed because he did not allege facts to show exhaustion as required by the Prison Litigation Reform Act (PLRA) (ECF No. 32-1 at 9) is without merit. "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). Moreover, plaintiff raises the issue of whether administrative remedies were available and this issue should be adjudicated by way of a motion for summary judgment. Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014). Since dismissal is appropriate on other grounds and the issue is not properly before the court on a Rule 12(b) motion to dismiss, the undersigned will not address whether plaintiff exhausted his administrative remedies or was excused from doing so.

In order to state a claim for retaliation under the ADA, "a plaintiff must make out a prima facie case '(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two.'" T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist., 806 F.3d 451, 472-73 (9th Cir. 2015) (quoting Emeldi v. Univ. of Or., 673 F.3d 1218, 1223 (9th Cir. 2012)). "Pursuing one's rights under the ADA constitutes a protected activity." Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 850 (9th Cir. 2004) (citations omitted). "[T]he standard for the 'causal link' is but-for causation," T.B. ex rel. Brenneise, 806 F.3d at 473 (citations omitted), and proximity in time can support an inference of retaliatory

intent, Pardi, 389 F.3d at 850 (citing Bell v. Clackamas County, 341 F.3d 858, 865-66 (9th Cir. 2003)).

In the complaint, plaintiff alleges that after he was transferred to administrative segregation on February 21, 2017, he was denied assistance transferring to and from his wheelchair in retaliation for past lawsuits he filed against prison staff (ECF No. 8-1 at 5, ¶ 27) and filing the instant lawsuit (id. at 7, ¶ 34). These conclusory allegations fail to state a claim for retaliation under the ADA.

With respect to the claim that the retaliation was due to previous lawsuits, the complaint does not identify any of the previous lawsuits for which plaintiff believes he is being retaliated against and does not establish what claims were raised in those suits. The complaint therefore lacks sufficient facts to show that plaintiff's previous lawsuits were protected activity under the ADA or that they were of sufficient temporal proximity to support an inference of retaliatory intent. As to the claim that the instant lawsuit prompted the retaliation, while pursuit of this lawsuit would constitute protected activity and denying necessary assistance in transferring to and from his wheelchair would constitute an adverse action, the allegations in the complaint are insufficient to establish the necessary causal link. (ECF No. 8-1 at 5, ¶¶ 26-27.)

Plaintiff argues that temporal proximity establishes the necessary but-for causation. (ECF No. 36 at 9-10.) However, approximately two months lapsed between the filing of the complaint and the denials of assistance. (ECF No. 8-1 at 5, ¶¶ 26-27.) While two months is still potentially close enough in time to provide circumstantial evidence of retaliatory intent, the facts further state that the denials did not begin until after he was transferred to administrative segregation following an incident with a prison employee, and there are no facts to show that the incident with the prison employee was such that it could be considered protected activity. In terms of temporal proximity, the circumstantial evidence plaintiff urges the court to rely on shows that it was the incident with the employee and his transfer to administrative segregation that precipitated the denials, not the filing of the complaint. (Id., ¶ 27.) The court further notes that, on the facts presented, it is questionable that the complaint could have been the trigger for any retaliatory action. Although the complaint was filed in December 2016, service on defendants was not

ordered until April 2017, well after the alleged retaliation began. (ECF No. 11.) There are no facts to show defendants or other medical staff would have had reason to know the complaint had been filed prior to the complaint being served.

For these reasons, plaintiff's Title V retaliation claim fails to state a claim and should be dismissed. Although plaintiff could potentially amend the complaint to fix the defects, the claim should be dismissed without leave to amend because it is not properly joined, as discussed below in more detail.

### 3. Counts Four and Five

In Counts Four and Five of the amended complaint, plaintiff seeks to bring claims under the DPA and UCRA. (ECF No. 8-1 at 8-9.) Because both acts incorporate the ADA by reference, plaintiff asserts that his rights under the DPA and UCRA have been violated because his rights under the ADA have been violated. (Id., ¶¶ 44-46, 50-51.) As discussed above, plaintiff's allegations are insufficient to state claims for relief under the ADA. Therefore his DPA and UCRA claims also fail. Although plaintiff may be able to offer additional facts regarding the underlying incidents, there are other defects with these claims that cannot be fixed by amendment and require dismissal of the claims without leave to amend. As defendants correctly point out, plaintiff has failed to timely comply with the Government Claims Act[1] (Claims Act) and the State and the CDCR, as well as defendants Osemwingie and Ramiscal in their official capacities, are immune from suit.

Statutes of limitations are affirmative defenses, not pleading requirements. Wyatt v. Terhune, 315 F.3d 1108, 1117 (9th Cir. 2003), overruled on other grounds Albino v. Baca, 747 F.3d 1162 (2014); Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1191 (Cal. 2013). However, under California law, the timely presentation of a claim under the Claims Act is a condition precedent and therefore an element of the cause of action that must be pled in the complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209 (Cal. 2007) (quoting State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240, 1245 (Cal. 2004)).

---

[1] Previously known as the Tort Claims Act. Cal. Gov't Code § 810 law revision commission comments (citing City of Stockton v. Superior Court, 42 Cal. 4th 730, 734, 741-42 (Cal. 2007)).

A plaintiff seeking to bring a lawsuit for money or damages against the state[2] "for death or for injury to person or to personal property or growing crops" must first submit a claim to the California Victim Compensation and Government Claims Board ("Claims Board") within six months after accrual of the cause of action. Cal. Gov't Code §§ 905.2; 911.2(a).[3] Claims "relating to any other cause of action" must be brought within one year of accrual of the cause of action. Cal. Gov't Code § 911.2(a). A claim against a public employee,[4] or former public employee, is not required to be presented prior to filing an action against the employee if the alleged injury resulted from an act or omission in the scope of the defendant's employment as a public employee. Cal. Gov't Code § 950. However, a cause of action against the employee cannot be maintained if an action for the injury would be barred against the employing public entity for failure to comply with the notice of claim requirements. Cal. Gov't Code § 950.2. In other words, a plaintiff must also submit a timely notice of claim to the Claims Board before he can bring suit against a state employee.

Exhibit 2 to the complaint shows that plaintiff failed to submit a timely claim to the Claims Board because his claim was submitted more than a year after the cause of action accrued. (ECF No. 8-3.) Plaintiff also appears to concede that he did not file a timely claim with the Claims Board and instead argues that he "does not have to file a government claim in a state law claim based entirely on ADA violations because the federal ADA preempts provisions of state laws that afford less protection to the disabled." (ECF No. 36 at 11.)

There are three situations in which a state law may be preempted by federal law. Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 280-81 (1987). First, Congress may "pre-empt state law by so stating in express terms." Id. at 280 (citing Jones v. Rath Packing, Co., 430 U.S. 519, 525 (1977)). Second, even where there is no express preemption, "[w]hen Congress intends

---

[2] "State" is defined as "the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.
[3] Defendants incorrectly cite to California Government Code § 905, which addresses claims against local public entities, and § 945.5, which was repealed in 1965. ECF No. 32-1 at 10.
[4] A "public employee" is an employee of a "public entity," which includes the State. Cal. Gov't Code §§ 811.2, 811.4.

federal law to 'occupy the field,' state law in that area is preempted." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000) (citations omitted). Finally,

> in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs either because "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S. Ct. 1210, 1217, 10 L. Ed.2d 248 (1963), or because the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399, 404, 85 L. Ed. 581 (1941).

Cal. Fed. Sav. & Loan Ass'n, 479 U.S. at 281; Crosby, 530 U.S. at 372-73 (citations omitted).

Neither party argues that the ADA occupies the field of disability rights, which would negate plaintiff's DPA and UCRA claims in their entirety. Moreover, the express language of the ADA would cause any such claim to fail. See 42 U.S.C. § 12201(b). However, plaintiff argues that his compliance with the Claims Act is excused by express preemption because the notice requirement amounts to less protection for disabled individuals than the ADA and by conflict preemption because it is an obstacle to the Congress's objectives. (ECF No. 36 at 11-14.)

Plaintiff's argues that § 12201(b) of the ADA, which provides that "[n]othing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any . . . law of any State . . . that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter," expressly preempts the Claims Act requirements. (ECF No. 36 at 12.) He argues that in enacting this statute "Congress clearly expressed its intent to preempt all laws that conflict with the federal act by providing lesser levels of protection." (Id.) He also seems to argue that the Claims Act requirements are subject to conflict preemption. (Id. at 13-15.) However, this argument appears incomplete, as it consists of only the standard for determining whether conflict preemption exists before somewhat confusingly transitioning into an argument that the California Legislature waived sovereign immunity by incorporating the ADA into the DPA and UCRA. (Id.)

As the undersigned previously found in Barker v. Hubbard, No. CIV S-08-1160 WBS CKD P, wherein plaintiff made substantially similar arguments for preemption,

11

> in [§ 12201(b)] of the ADA cited above, Congress made a very simple and limited proclamation that any law providing equal or more protection than the ADA would not be preempted by the ADA. Congress said nothing explicitly or implicitly about state statutes providing less protection than the ADA, or the applicability of claim presentation statues, such as the Claims Act, to ADA-like claims arising under state law. Furthermore, . . . the procedural requirements of the Claims Act do not render the CDPA or the Unruh act as providing less "protection" than the ADA as the Claims Act does not limit the relief which can be obtained or the types of claims which can be asserted.

Barker v. Hubbard, No. CIV S-08-1160 WBS CKD P, 2011 WL 5241256, at *2 (E.D. Cal. Nov. 1, 2011, adopted in full Dec. 23, 2011). This reasoning still stands and plaintiff has pointed the court to no authority that would warrant a different outcome in this case. Additionally, plaintiff's failure to comply with the notice of claim requirements for bringing a state law claim in no way inhibits his ability to bring a claim under the ADA, so there is no conflict between the state and federal laws.

The undersigned finds that there is nothing in the ADA which explicitly or implicitly evinces an intent to invalidate a notice of claim requirement, like the one established by the Claims Act, when it is applied to state law claims, even if those claims are similar to those capable of being brought under the ADA. Accordingly, plaintiff was required to comply with the Claims Act and his failure to do so bars his claims under the DPA and UCRA.

Finally, plaintiff's claims against defendants are barred by the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974) ("While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." (citations omitted)). Plaintiff argues that by incorporating the ADA, the California Legislature intended to waive sovereign immunity. However, this line of reasoning demonstrates, at best, implied consent, and "[a]bsent a state's *unequivocal* consent, the Eleventh Amendment bars a federal court from entertaining a suit against that state, or one of its agencies or departments, based on state law." Hall v. State of Haw., 791 F.2d 759, 761 (9th Cir. 1986) (emphasis added) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984)); Pennhurst, 465 U.S. at 103-06 (Eleventh Amendment bars claims against state officials

based on state law).

Plaintiff points to no authority that supports his theory that adopting the same standard for what constitutes a violation demonstrates the unequivocal consent necessary to find waiver and the language and stated purpose of the DPA and UCRA do not support his position. Both the DPA and UCRA simply state that a violation of rights under the ADA also constitutes a violation of those acts. Cal. Civ. Code §§ 51(f), 54(c). With respect to the UCRA,

> [t]he general intent of the legislation was expressed in an uncodified section: "It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990 (Public Law 101–336) and to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990." (Stats.1992, ch. 913, § 1, p. 4282.)

Munson v. Del Taco, Inc., 46 Cal. 4th 661, 669 (Cal. 2009). This purpose evidences an intent to strengthen California law by expanding what conduct constitutes a violation of the UCRA, not an intent to waive sovereign immunity. Similarly, the relevant identified purpose of the amendment to the DPA was to "[m]ake a violation of the federal Americans with Disabilities Act a violation of these provisions." 1996 Cal. Legis. Serv. Ch. 498 (West). Again, this is insufficient to demonstrate unequivocal consent. The undersigned is unpersuaded by plaintiff's argument that California has waived sovereign immunity and accordingly finds that plaintiff's DPA and UCRA claims are barred by the Eleventh Amendment.

For the reasons set forth above, plaintiff's DPA and UCRA claims should be dismissed without leave to amend.

### 4. Count Six

In addition to the claim against Osemwingie and Ramiscal related to their use of the hoyer lift, Count Six contains an allegation that Ramiscal violated plaintiff's Eighth Amendment rights by leaving after helping him transfer to the toilet and failing to respond to his requests for assistance in transferring back to his wheelchair, which resulted in him waiting approximately twenty minutes for assistance from nursing staff and suffering additional pain. (ECF No. 8-1 at 4-5, 10, ¶¶ 20-23, 59.)

////

Plaintiff's claim that Ramiscal abandoned him, resulting in his being stuck on the toilet for approximately twenty minutes, demonstrates no more than negligence. The facts indicate that other nursing staff responded to the calls for assistance, and there are no facts to indicate that Ramiscal was ignoring the calls or knew that there would be a delay in staff responding. Even if Ramiscal knew there would be some delay in staff responding to plaintiff's calls for assistance, there are no facts that show a delay in responding would pose a substantial risk to plaintiff's health and safety. Although plaintiff claims he suffered increased pain as a result of the incident, it is not evident that the pain constituted substantial harm. <u>Wood v. Housewright</u>, 900 F.2d 1332, 1335 (9th Cir. 1990) (citing <u>Shapely v. Nev. Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)) (a delay in treatment does not constitute deliberate indifference unless it causes substantial harm). Plaintiff's failure to address defendants' arguments related to this claim indicates that he concedes that these allegations fail to state a claim. Accordingly, this claim should be dismissed for failure to state a claim and leave to amend should not be granted because plaintiff has not demonstrated that it can be cured by amendment.

         5.        <u>Joinder</u>

Multiple claims can only be joined if they are all against a single defendant, Fed. R. Civ. P. 18(a), and joinder of defendants is only permitted if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2).

The only incident that would allow for proper joinder of all defendants is the alleged improper use of the hoyer lift by Osemwingie and Ramiscal. However, as addressed above, this incident does not properly form the basis of an ADA or RA claim and the DPA and UCRA claims are barred. Accordingly, joinder of the State and the CDCR based on this incident is improper. For the same reasons, the claim that Ramiscal abandoned plaintiff on the toilet also fails to provide a proper basis for asserting claims against the State and the CDCR and joining them in the complaint. Finally, since there are no allegations that Osemwingie and Ramiscal were involved in the denials of assistance that allegedly occurred in 2017, these events also fail to

14

establish proper grounds for joining the State and the CDCR as defendants, resulting in both the claims and defendants being improperly joined.

Where parties have been misjoined, the court may drop a party or sever the claims against that party. Fed. R. Civ. P. 21. "[D]istrict courts who dismiss rather than sever must conduct a prejudice analysis, including 'loss of otherwise timely claims if new suits are blocked by statutes of limitations.'" Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015) (quoting DirecTV, Inc. v. Leto, 467 F.3d 842, 846-47 (3d Cir. 2006)). Plaintiff's allegations against the State and CDCR fail to state cognizable claims, and those arising in 2015 are not correctable by amendment. Moreover, the claims which may be capable of successful amendment arose in 2017, so it is still possible for plaintiff to bring a separate, timely action on these claims should he be able to allege additional facts to make them cognizable.

Since plaintiff cannot cure the defect of misjoinder and the court finds he would not be prejudiced by dismissal, the ADA and RA claims against the State and the CDCR should be dismissed without leave to amend.

III. Motion for Temporary Restraining Order

A temporary restraining order is an extraordinary measure of relief that a federal court may impose without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

"A plaintiff seeking a preliminary injunction must establish that he is [(1)] likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted). The Ninth Circuit has held that, even if the moving party cannot show a high likelihood

of success on the merits, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) ("'[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.'" (quoting Martin v. Int'l Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984))).

As set forth above, Counts One through Five of the complaint should be dismissed without leave to amend. Since the injunctive relief requested is predicated on plaintiff's ability to prevail on his Title V claims in Count Two, he is unable to show any likelihood of success on the merits and the motion for a temporary restraining order should be denied.

IV. Conclusion

Defendants' motion to dismiss should be granted and Counts One through Five should be dismissed without leave to amend. Count Six should be dismissed with leave to amend as to the claim that Osemwingie and Ramiscal incorrectly used the hoyer lift and dismissed without leave to amend as to the claim that Ramiscal left plaintiff after assisting him in transferring to the toilet. Because the claims upon which plaintiff's motion for a temporary restraining order rely should be dismissed without leave to amend, the motion for temporary restraining order should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for temporary restraining order (ECF No. 9) be denied.

2. Defendants' motion to dismiss (ECF No. 32) be granted.

3. Counts One through Five and the portion of Count Six alleging defendant Ramiscal abandoned plaintiff be dismissed without leave to amend and the portion of Count Six related to the claim that defendants Osemwingie and Ramiscal misused the hoyer lift be dismissed with leave to amend.

////

4. Plaintiff have thirty days from the District Judge's Order ruling on these findings and recommendations to file an amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 11, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

13:bark3008.mtd.tro.f&r