UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BARKER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OSEMWINGIE, et al.,<br><br>　　　　　Defendants. | No. 2:16-cv-3008 CKD P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c) and Local Rule 305(a). ECF Nos. 39, 60. Currently before the court is defendants' fully briefed motion for summary judgment. ECF No. 63.

　　I.　　Plaintiff's Allegations

This case proceeds on the second amended complaint, which alleges that defendants Osemwingie and Ramiscal were deliberately indifferent to plaintiff's serious medical needs. (ECF No. 47.) Specifically, plaintiff alleges that he requires the use of a wheelchair and that he is unable to transfer to and from his wheelchair without assistance. (Id. at 2, ¶ 2.) On March 2, 2015, he requested assistance transferring from his wheelchair to the toilet, and Osemwingie and Ramiscal responded to the request. (Id. at 4, ¶ 12.) Plaintiff is a large man, weighing over 250

pounds, and defendants used a Hoyer lift to effectuate the transfer. (Id. at 2, 4, ¶¶ 2, 13.) A Hoyer lift "is designed to move patients that are unable to stand on their own and/or whose weight makes it unsafe to move or lift them manually." (Id. at 4, ¶ 14.) Plaintiff asserts that instead of using the lift in the way it was intended, by placing the straps underneath his body, defendants instead placed the straps underneath his arms and attempted to lift him, causing injury to his back. (Id., ¶¶ 14-16.)

II. Motion for Summary Judgment

A. Defendants' Arguments

Defendants argue that they were not deliberately indifferent to plaintiff's serious medical needs because they were unaware that he had a chronic back condition or that the Hoyer lift should not have been used. (ECF No. 63-1 at 5-8.) Alternatively, they argue that they are entitled to qualified immunity. (Id. at 8-11.)

B. Plaintiff's Response

Plaintiff opposes defendants' motion and argues that they knew both that he had a chronic back condition and that improperly using the lift would cause him pain. (ECF No. 67 at 5-7.) He also argues that defendants are not entitled to qualified immunity because the constitutional standard for medical care has long been established. (Id. at 7-8.)

III. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the

pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

IV. Legal Standard for Deliberate Indifference

To maintain an Eighth Amendment claim based on inadequate medical treatment, plaintiff must show "'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is a very strict standard. It is more than "mere negligence." Farmer v. Brennan, 511 U.S. 825, 835, (1994). Even civil recklessness—failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"—is insufficient to establish an Eighth Amendment claim. Id. at 836-37 & n.5 (citation omitted). A prison official will be found liable under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A plaintiff can establish deliberate

indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle, 429 U.S. at 104-05). A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

V. Undisputed Material Facts

At all times relevant to the complaint, plaintiff was incarcerated at the California Health Care Facility (CHCF) where defendants Osemwingie and Ramiscal were employed as Certified Nurse Assistants. Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 63-2) ¶¶ 4, 8; Response to DSUF (ECF No. 67-2) ¶¶ 4, 8. Plaintiff is confined to a wheelchair and requires assistance to get in and out of the wheelchair. DSUF ¶ 2; Response to DSUF ¶ 2.

On the evening of March 3, 2015, plaintiff requested assistance using the toilet, and defendants and a correctional officer reported to his cell to assist him with transferring to the toilet. DSUF ¶ 13; Response to DUSF ¶¶ 13a, 13b. When they arrived, plaintiff was already in his wheelchair. DSUF ¶ 14; Response to DSUF ¶ 14. Ramiscal retrieved the Hoyer lift and Osemwingie told plaintiff that they would be using the lift to transfer him to the toilet. DSUF ¶ 15; Response to DSUF ¶ 15a. Plaintiff responded by complaining that he did not want to use the lift because it hurt his scrotum and claims that he also advised defendants that his back was "messed up." DSUF ¶¶ 15-16; Response to DSUF ¶¶ 15b, 16. He further insisted that defendants not use the lift and manually lift him instead, and repeatedly mentioned the bullet in his scrotum

and the pain the lift caused to that part of his body. DSUF ¶ 18; Response to DSUF ¶¶ 18a, 18b.

In response to plaintiff's complaints, Osemwingie suggested that the sling for the lift be put under plaintiff's arms, without placing the sling under his legs and scrotum. DSUF ¶ 20; Response to DSUF ¶ 20b. Osemwingie then placed the sling around plaintiff's back and under his arms while Ramiscal brought the lift closer to Osemwingie's position and Osemwingie hooked both ends of the sling to the lift. DSUF ¶ 22; Response to DSUF ¶¶ 22a, 22b. As soon as Osemwingie started the lift, plaintiff screamed out in pain and complained that it would not work for him and that his back hurt. DSUF ¶ 23; Response to DSUF ¶ 23a; Plaintiff's Statement of Facts (PSOF) (ECF No. 67-3) ¶ 57; Response to PSOF (ECF No. 69-1) ¶ 57. Defendants immediately stopped the lift and set plaintiff back in his wheelchair. DSUF ¶ 23; Response to DSUF ¶ 23a, 23b. Defendants then removed the sling and left plaintiff's cell to report the incident to their supervisor. DSUF ¶ 25; Response to DSUF ¶ 25a. Defendants were directed to other tasks and told that a nurse would attend to plaintiff, and neither had any further contact with plaintiff that evening. DSUF ¶ 25; Response to DSUF ¶¶ 25b, 25c.

Prior to plaintiff's transfer to CHCF on February 27, 2015, no doctor or healthcare provider had issued an order barring the use of the Hoyer lift or other mechanical lift to move or transfer plaintiff. DSUF ¶¶ 3-4; Response to DSUF ¶¶ 3-4. Additionally, on the morning of March 3, 2015, plaintiff was seen by a nursing supervisor to discuss his concerns about using the Hoyer lift. DSUF ¶ 12; Response to DSUF ¶¶ 12a. The nursing supervisor noted in his chart that the Hoyer lift was to be used to transfer him "to ensure inmate/patient's and staff safety," and at the time of the incident later that evening, defendants were not aware of any doctor's orders prohibiting or discontinuing the use of the Hoyer lift on plaintiff. DSUF ¶¶ 12, 27; Response to DSUF ¶¶ 12d, 27.

VI.     Discussion

The parties are largely in agreement as to what occurred on the evening of March 3, 2015, and their potentially material disputes center primarily on the content of the verbal communications between the parties, whether defendants were aware of plaintiff's chronic back condition, and whether defendants' use of the Hoyer lift was appropriate given plaintiff's

condition.  See DSUF ¶¶ 17, 19, 20, 21, 26, 28-30; Response to DSUF ¶¶ 17a, 17b, 19b, 19c, 20c, 21a, 21b, 26a, 28-30; PSOF ¶¶ 44, 51, 54; Response to PSOF ¶¶ 44, 51, 54.  However, as discussed below, these disputes are either ultimately immaterial or are not properly supported by evidence to create a genuine dispute of fact.

      As an initial matter, the court will assume for purposes of the motion that defendants were aware of plaintiff's chronic back problems, rendering any disputes as to that fact immaterial.  The disputes as to whether Osemwingie explained that the lift had to be used for safety reasons and unless there was a doctor's order to the contrary and whether he explained how the lift would work are also immaterial.  Even if Osemwingie did not tell plaintiff these things, it would not demonstrate deliberate indifference, and plaintiff does not assert that Osemwingie instead made comments indicating that he knew the proposed use of the Hoyer lift would cause plaintiff harm.

      In support of their motion, defendants submit the expert report of registered nurse Michelle Camicia.  (ECF No. 63-5 at 162-67.)  Camicia opines that the way in which the lift was used to transfer plaintiff "act[ed] in a similar manner to that of a stand-assist lifting device or an appropriate manual lift with the assistance of two people."  (Id. at 166.)  She further opines that both the use of the Hoyer lift and the manner in which it was used to transfer plaintiff were appropriate and met the standard of care and that use of the lift was not contraindicated by plaintiff's chronic back condition.  (Id. at 164-66.)  Finally, Camicia did not see "any evidence that [plaintiff's] back would not have been injured had the Defendants performed a manual lift instead."  (Id. at 166.)  Although plaintiff disputes Camicia's findings, the evidence he presents to support his disputes is insufficient to create a genuine dispute of fact.

      As evidence that the use of the lift was not appropriate, plaintiff relies on the instruction guide for the Golvo 707 ES, which he asserts is the model of lift used.  Response to DSUF ¶¶ 28-30.  Defendants' object to the admissibility of the guide, but even assuming that plaintiff could present the guide in a manner that would be admissible at trial, it does nothing to support his position.  (See ECF No. 67-4 at 47-62.)  As defendants accurately point out, "[n]othing in the instructions addresses the proper manner in which the lift is to be used when transferring a patient from a sitting position to a sitting position.  Only bed transfers are addressed in the instructions."

(ECF No. 69 at 3-4.) Furthermore, to the extent plaintiff attempts to establish through his own testimony that it was improper to use the Hoyer lift by putting the sling under only his arms, these assertions are not properly supported by competent evidence. Though plaintiff is competent to testify to the methods in which the lift had been used on him in the past, he has not established that he is competent to testify as to what constitutes proper or improper use of the lift.[1] This lack of evidentiary foundation similarly renders immaterial any disputes the parties have regarding whether plaintiff made statements about the propriety of using the Hoyer lift in the manner suggested. Even if plaintiff made such statements, absent some evidence that he advised defendants that the lift had been used in a similar manner in the past with adverse consequences, his disagreement with defendants' chosen course of action shows only a difference of opinion. Finally, plaintiff's claim that a manual lift would not have injured him because previous manual lifts had not (Response to DSUF ¶ 30), even if true, does not establish that use of the Hoyer lift was medically unacceptable.

Plaintiff has failed to demonstrate that a material dispute of fact exists as to defendants' knowledge that using the Hoyer lift would cause him harm or as to the appropriateness of using the lift in the manner in which it was used, even considering his chronic back condition. Therefore, even if plaintiff did suffer extreme and prolonged pain as a result of the attempt to move him with the Hoyer lift as he claims, he cannot show that his injury was the result of defendants' deliberate indifference and defendants' motion for summary judgment must be granted.

////

---

[1] Plaintiff's statements that non-parties CO Gonzales and RN Coloma also disagreed with the proposed use of the Hoyer lift will be disregarded. PSOF ¶¶ 40-41. These purported statements of fact are supported by only plaintiff's deposition testimony and defendants argue that they are therefore inadmissible hearsay. (ECF No. 69 at 6; ECF No. 69-1 at 3.) Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Plaintiff has not shown that he could make these statements admissible, but even if the court were to assume that he could do so, the alleged comments are too vague to implicate more than a difference of opinion as to how the lift should be used and are wholly inadequate to establish a material issue of fact as to whether the way the lift was used was medically unacceptable.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment (ECF No. 63) is granted.
2. This action is dismissed with prejudice.
3. Judgement is entered for defendants.

Dated: March 19, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

13:bark3008.msj