1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WILLIAM BARKER,                           No.  2:16-cv-3008 CKD P

12                  Plaintiff,

13        v.                                    ORDER

14   OSEMWINGIE, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner proceeding with counsel.  On September 1, 2022, the court

18   recommended that plaintiff's fourth amended complaint be dismissed for failure to state an

19   actionable claim and that this case be closed.  Plaintiff filed objections seeking leave to file a fifth

20   amended complaint.  After the objections were filed, the State of California and the California

21   Department of Corrections and Rehabilitation (CDCR) consented to magistrate judge jurisdiction

22   in this case.  See 28 U.S.C. § 636(c).  All parties have now consented.

23        Good cause appearing, the court will vacate the September 1, 2022, findings and

24   recommendations, plaintiff's motion for leave to amend will be granted and the court will screen

25   plaintiff's fifth amended complaint as the court must under 28 U.S.C. § 1915A(a).

26        Under that statute the court is required to screen complaints brought by prisoners seeking

27   relief against a governmental entity or officer or employee of a governmental entity.  The court

28   must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

1

1  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

2  monetary relief from a defendant who is immune from such relief.

3       In order to avoid dismissal for failure to state a claim a complaint must contain more than

4  "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

5  of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words,

6  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

7  statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  When considering

8  whether a complaint states a claim upon which relief can be granted, the court must accept all

9  non-conclusory allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe

10  the complaint in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232,

11  236 (1974).

12  I. Background

13       This matter was remanded to this court from the Ninth Circuit on December 21, 2021.

14  Pursuant to the terms of the remand order, the court was directed to grant plaintiff leave to amend

15  so that he could raise claims under Title II of the Americans with Disabilities Act (42 U.S.C. §

16  12131 et seq.) (ADA), the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.) (RA) and raise a

17  claim for retaliation under Title V of the Americans with Disabilities Act (42 U.S.C. § 12203), all

18  claims arising from a failed attempt to transfer plaintiff from his wheelchair to a toilet at the

19  California Health Care Facility in Stockton.  In the fifth amended complaint, plaintiff asserts

20  claims for damages under Title II of the ADA and section 504 of the RA.  Here, there "is no

21  significant difference in the analysis of rights and obligations created by [Title II of the ADA and

22  section 504 of the RA]." Vinson v. Thomas, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).

23  Accordingly, the analysis which follows is applicable to both plaintiff's ADA and RA claims.

24  II. No Individual Liability

25       The appropriate defendant in an ADA action for damages is a public entity and not an

26  individual. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).  The public entity is

27  vicariously liable for the acts of its employees. Duvall v. County of Kitsap, 260 F.3d 1124, 1141

28  (9th Cir. 2001).  In his fifth amended complaint, plaintiff identifies as defendants the State of

California, CDCR, Stephen Osemwingie and M. Ramsiscal.  As plaintiff cannot proceed against individuals, and proceeding against both the State of California and CDCR is redundant, all defendants other than the State of California are subject to dismissal.

III.  ADA Standard

Title II of the ADA "prohibit[s] discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  In order to state a claim upon which relief can be granted under Title II of the ADA, plaintiff must adequately allege:  (1) he has disability; (2) is otherwise qualified to participate in or receive the benefit of the State of California's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of such services, programs, or activities, or was otherwise discriminated against; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  Additionally, to state a claim for money damages, plaintiff must allege "intentional discrimination on the part of the defendant," and the standard for intentional discrimination is at least deliberate indifference.  Duvall, 260 F.3d 1124 at 1138.  Deliberate indifference is "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood."  Id. at 1139.

IV.  Allegations and Analysis

In his Fifth Amended Complaint, plaintiff adequately alleges that, because of a disability, he cannot use a toilet without assistance.

In the Ninth Circuit's remand order, that court found that use of a toilet qualifies as a protected service under the ADA.  ECF No. 83 at 3.

As to whether plaintiff was denied use of a toilet because of his disability in violation of the ADA, plaintiff alleges, in relevant part, as follows:

> On March 3, 2015, Barker was in his cell and needed to use the bathroom.  He pressed his "call light" to notify the nurse's station that he required attention and waited in his wheelchair for assistance. Thereafter, Defendants Stephen Osemwingie and M. Ramiscal, certified nursing assistants employed at the prison, arrived. One of them brought a Liko Golvo 7007 ES Hoyer lift.

> Osemwingie told Barker he would use the Hoyer lift to transfer him from his wheelchair to the toilet.  Based on past experience, Barker

advised Osemwingie against this and requested they proceed with the two-person lift used in the past for this transfer. Osemwingie refused. Barker pleaded, "Hey man, you've been transferring me with two-person assist, and I have a bullet under my scrotum. My back is already messed up. Why are you trying to use the Hoyer lift on me now?"

Osemwingie responded, "If he doesn't let me transfer him with this Hoyer left, then I'm not going to assist him." Barker was desperate. He needed to use the restroom very badly, as he was about to defecate himself. So Barker relented in the defendants' use of the Hoyer lift.

Under normal circumstances, Barker would sit in a thick mesh material ("the sling") that has four straps, two on the bottom and two on the top. The two straps at the top are put on the Hoyer lift, one strap over each shoulder, and his body would sit inside the material. The attendant would then take the bottom straps, crisscross them over his legs, and put them on the Hoyer lift to keep him from sliding out. That's not what Osemwingie did.

Instead, he placed the two top straps under Barker's armpits instead of over his shoulders, and did not crisscross the bottom straps between his legs. Osemwingie attached one side and Ramiscal – under Osemwingie's instruction – attached the other.

Barker again began to protest, complaining how the Hoyer lift was going to hurt his back and irritate the bullet under his scrotum. Osemwingie refused to listen, reassuring Barker that he was going to lift him in a way that didn't hurt the bullet or his back. But as Osemwingie sat Barker in the lift (and connected him to the sling), Ramiscal and another prison employee, RN Coloma, began to question his technique. Nevertheless, Osemwingie reassured his co-workers, "I know what I'm doing." This was after RN Coloma had already advised against even attempting to use the Hoyer lift.

Osemwingie turned on the machine and started lifting Barker. But when Barker was about six-inches high, suspended only by his arm pits, he heard popping sounds from his low back and screamed out in pain. His back – from the waist to the middle – immediately started throbbing with pain.

"Hold it, man," Barker cried, "you just popped my back out." Osemwingie then lowered him down, and Barker immediately asked for medical attention. Instead, he was disconnected from the lift and everyone left. For over an hour, Barker pressed his call light, shouting: "Hey man, you just popped my back out. I need to see somebody because my back is killing me." Finally, a second registered nurse, RN Qamer, appeared.

It is not clear from plaintiff's allegations when he used the toilet or otherwise relieved himself.

/////

/////

4

Case 2:16-cv-03008-CKD   Document 98   Filed 03/17/23   Page 5 of 6

Plaintiff's allegations, in relevant part, continue as follows:

> Since the incident, Barker has successfully used the lift on multiple occasions, suggesting that the pain and suffering he endured was completely unnecessary.

Finally, plaintiff alleges Osemwingie failed to "comply with the Hoyer lift instruction manual," but fails to indicate how or identify the precise language included in the instruction manual suggesting as much. However, plaintiff provided a copy of the instruction manual for the Liko Golvo 7007 ES Hoyer lift on May 15, 2019 with an opposition to a motion for summary judgment brought by Osemwingie and Ramiscal and page 13 of the manual at least suggests that the lift was used correctly. ECF No. 67-4 at 59.[1]

The court finds that these allegations do not suggest that Osemwingie and Ramiscal's failed attempt to provide plaintiff access to toilet services by means of the Hoyer lift amounts to a denial of the use of a toilet because of plaintiff's disability. The only allegation made by plaintiff that remotely suggests plaintiff was denied access because of his disability is his assertion that he told Osemwingie before the Hoyer lift was used in the manner described that his back was "messed up." However, plaintiff also indicated to Osemwingie and Ramiscal that a "two person assist" would be fine and plaintiff does not explain how a "two person" assist would have been materially different from the use of the Hoyer lift in the manner it was used. Further, plaintiff does not point to facts suggesting he would not have been injured if a "two person assist" would have been the chosen course of action. In light of these facts, the plaintiff's allegations suggest he was denied access to a toilet because he was unintentionally injured on the way to the toilet and not because he was discriminated against by virtue of his disability.

Furthermore, plaintiff has not adequately alleged deliberate indifference. In order to adequately allege deliberate indifference, plaintiff would have to point to facts suggesting that the use of the Hoyer lift by Osemwingie and Ramiscal amounted to a failure to act in the face of a substantially likely violation of the ADA. However, the defendants did act, and their actions

---

[1] The court is normally confined to consideration of the pleadings in order to determine whether an actionable claim is stated. However, the court may consider outside documents where, as here, the authenticity of the document is not contested and the complaint necessarily relies on the contents of the document. Lee v. Cty. of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001).

5

1    cannot be construed to amount to a failure to address even a potential violation of the ADA, let

2    alone one that was "substantially likely."

3    V.   <u>Conclusion</u>

4         For these reasons, plaintiff's Fifth Amended Complaint will be dismissed and this case

5    will be closed.

6         Accordingly, IT IS HEREBY ORDERED that:

7       1.  The court's September 1, 2022 findings and recommendations are vacated;

8       2.  Plaintiff's motion for leave to amend is granted;

9       3.  The Clerk is directed to file the proposed Fifth Amended Complaint lodged with the

10    court on September 15, 2022;

11       4.  Plaintiff's Fifth Amended complaint is dismissed; and

12       5.  This case is closed.

13    Dated:  March 16, 2023

14   

15       CAROLYN K. DELANEY
           UNITED STATES MAGISTRATE JUDGE

16

17

18   1
   bark3008.dis.ada

19

20

21

22

23

24

25

26

27

28

6